**Terrence BURNS, M.D. and John Zoll, Plaintiffs,**

v.

**IMAGINE FILMS ENTERTAINMENT, INC., MCA, Inc. and Universal City Studios, Inc., Defendants.**

No. 92–CV–243S.

United States District Court, W.D. New York.

Feb. 16, 1996.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY (Jeremiah J. McCarthy, Paul B. Zuydhoek, and David S. Teske, of counsel), for plaintiffs.

Jaeckle, Fleischmann & Mugel, Buffalo, NY (Linda H. Joseph and Jennifer M. Demert, of counsel), for defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Honorable William M. Skretny on July 15, 1992 for determination of any non-dispositive motions. The matter is presently before the court on Defendants' motion for reconsideration, filed December 29, 1994.

## BACKGROUND and FACTS

Plaintiffs, Terrence Burns, M.D. and John Zoll, commenced this copyright infringement action on April 8, 1992. Plaintiffs, both firefighters, claim that they collaborated on two screenplays about firefighters which they sent to Anthony Yerkovich, a screenwriter located in Santa Monica, California. Plaintiffs contend that, thereafter, the movie *Backdraft*, a film about firefighters, was released in 1991 by Defendants Imagine Films Entertainment ("Imagine Films"), MCA, Inc. ("MCA"), and Universal City Studios ("Universal"), and that the screenplay for *Backdraft* had used significant portions of Plaintiffs' original screenplays, "Down to Gehenna" and "Baptism of Fire," both of which were copyrighted works.

On September 14, 1992, Plaintiffs served their First Set of Interrogatories and Request for Production of Documents. The portions of the document request relevant to this motion, Document Request Nos. 5, 6, 7 and 8, required Defendants to produce all documents, including final, interim or periodic financial records and revenues received from the conception, creation, marketing, distribution or merchandising of *Backdraft*, as well as all expenses, charges and allowances subtracted from gross revenues to calculate net profit, all contracts and agreements to pay any person, party or entity for expenses for any of the above, all contracts and correspondence relating to any of the above, and all documents relating to compensation paid, promised to be paid, or owing to any person or entity for the conception, creation, modification, writing or revision of the script of *Backdraft*, including book, magazine or short story versions of *Backdraft*.

Upon receipt of Plaintiffs' request for production of documents, Defendants moved, on November 23, 1992, for a protective order to defer discovery on damage-related issues until three months prior to trial or until resolution of Defendants' summary judgment motion,[1] and to allow redaction of all financial references in documents subject to discovery. By order dated August 9, 1993, this court denied Defendants' motion for the requested protective order, and found that discovery as to both liability and damage issues should proceed in the usual manner. No objections were filed with respect to this decision, nor was there a motion to reargue or reconsider.

On June 30, 1993, Plaintiffs moved to compel disclosure of certain documents which Defendants refused to provide, or had provided in redacted form, and more specific answers in response to Plaintiffs' First Set of Interrogatories. Additionally, Plaintiffs sought to review the original documents rather than the copies supplied by Defendants. Finally, Plaintiffs objected to Defendants' responses to the First Set of Interrogatories in which Defendants stated that the interrogatories were vague, overbroad and not reasonably calculated to lead to disclosure of admissible evidence, and refused to answer such interrogatories. Thereafter, Defendants moved, on September 10, 1993, to bifurcate the trial on the issue of liability from the trial on the issue of damages, and to stay discovery on damage-related issues pending a determination of liability.

On March 21, 1994, this court denied Defendants' motion to bifurcate and stay discovery on damage-related issues, as it concluded that discovery relating to damages could conceivably lead to information relevant to the issue of access. Decision and Order dated March 21, 1994 at pp. 5–7. In the same decision, the court granted, in part, Plaintiffs' motion to compel, ordering the Defendants to produce documents responsive to Plaintiffs' Document Request Nos. 5, 6, 7 and 8. The court found that Plaintiffs were entitled to a full response to Document Request Nos. 5, 6 and 8, *see* Decision and Order dated March 21, 1994, and, after *in camera* inspection, directed Defendants to produce a redacted version of the distribution agreement between Universal and Imagine Films in response to Request No. 7.[2] Decision and

---

1. Although Defendants indicated the motion was expected to be filed promptly thereafter, it was not filed until March 22, 1994.

2. Defendants did produce seventy-nine pages of documents in response to Request No. 7, however, Defendants objected to providing the distribution agreement between Universal and Imagine Films on the grounds that this discovery request

Order dated April 7, 1994. Again, no objections to these orders were filed, nor did Defendants move for reconsideration.

Defendants filed their summary judgment motion on March 22, 1994. In conjunction with this motion, Defendants sought a stay of all discovery pending resolution of the motion for summary judgment. On May 14, 1994, the court ordered briefing on the issue of a stay of discovery generally, but directed that all previously ordered discovery go forward. Order dated May 16, 1994 at p. 2.

In response to this court's March 21, 1994 order, Defendants produced two hundred documents including production notes, screenwriter agreements, distribution agreements, scene notes, reactions to drafts, script cuts and drawings, memoranda regarding payments to Gregory Widen, the script writer, rights to release the film, and agreements between Imagine Films and others regarding *Backdraft*. However, all documents addressing expenses, charges, contracts and obligations to pay persons or entities, as well as documents regarding persons or entities that received payment for services rendered responsive to Plaintiffs' Document Request were not produced. Rather, reasserting their earlier contention that it would be "onerous and burdensome to have to provide the voluminous documents demanded," Declaration of Ralph L. Halpern, Esq., dated November 23, 1992 at ¶ 15, Defendants indicated by letter dated June 10, 1994, that "[defendants] presently intend to produce for plaintiffs' review documents setting forth the financial information responsive to plaintiffs' first request for documents, in accordance with Judge Foschio's recent orders as soon as they are received from California." Plaintiffs' Motion for Sanctions, Zuydhoek Affidavit A, filed September 2, 1994, Exhibit B. By letter dated June 20, 1994, Defendants' counsel stated that documents containing financial information responsive to Plaintiffs' first request for documents would be made available for inspection on June 23, 1994. Plaintiffs' Motion for Sanctions, Zuy-

dhoek Affidavit A, filed September 2, 1994, Exhibit C. However, on June 23, 1994, contrary to Plaintiffs' expectation of full production, Defendants produced only six pages of financial "summaries" setting forth the total receipts and expenses for *Backdraft*, including "summaries" of production costs, distribution expenses and post-production annual figures.

After Plaintiffs' motion for sanctions was filed, in a letter dated October 18, 1994, Defendants' attorney admitted that additional financial documentation relating to costs and expenses associated with the *Backdraft* film's production and distribution existed in "four different film exchange locations in the United States, and one in Puerto Rico, one in Canada, and at numerous foreign locations." McCarthy Affidavit, filed October 21, 1994, Exhibit A, p. 4. Further, Defendants' attorney stated that the information, assimilated to provide the six pages of financial summaries, was contained in computer runs in Los Angeles, California, and the raw cost data, including checks, was kept on microfilm. McCarthy Affidavit, filed October 21, 1994, Exhibit A, p. 4. In a letter dated September 23, 1994, Defendants requested, as a part of a "compromise," that Plaintiffs provide them with a more specific list of the documents needed. *See* McCarthy Affidavit, filed October 21, 1994, Exhibit A, p. 2. Additionally, at oral argument on the September 2, 1994 sanctions motion, held November 2, 1994, Mr. Halpern informed the court that other documents, including canceled checks and certain information recorded on microfilm, addressing expenses, charges or allowances relating to *Backdraft*, were available and had not been produced.

On December 21, 1994, this court issued a Decision and Order granting sanctions against the Defendants in the form of resolving the issue of prior access in favor of the Plaintiffs, and awarded Plaintiffs' attorney's

---

was overbroad and irrelevant to the issues in this case. After reviewing the distribution agreement, this court directed Defendants to provide a redacted version, disclosing only paragraphs 4, 8, 9, 14, 15, 16 and 17. The court concluded

that the remaining paragraphs were irrelevant to the issues presented in this case and, therefore, should not be disclosed. Decision and Order dated April 7, 1994.

fees for the motion.[3] In response, on December 29, 1994, the Defendants filed a motion for reconsideration of the December 21, 1994 Decision and Order. Both parties subsequently filed numerous affidavits and exhibits in support of and in opposition to the motion to reconsider.

On January 13, 1995, Judge Skretny referred Defendants' motion for reconsideration to this court for report and recommendation to the extent that this court deems that the motion dispositive. Referral Order, filed January 13, 1995.

For the reasons discussed, Defendants' motion for reconsideration of this court's Decision and Order dated December 21, 1994 is GRANTED and upon such reconsideration the court adheres to its Decision and Order of December 21, 1994 for the reasons stated in that Decision and Order and in this Decision and Order.

### DISCUSSION

 It is well established that the function of a motion for reconsideration is to present the court with an opportunity to correct "manifest errors of law or fact or to consider newly discovered evidence...." *LoSacco v. City of Middletown*, 822 F.Supp. 870, 876–877 (D.Ct.1993), *aff'd.*, 33 F.3d 50 (2d Cir.1994) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987)). The scope of review on motions for reconsideration is limited "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters." *LoSacco, supra*, at 877 (quoting *Lund v. Chemical Bank*, 675 F.Supp. 815, 817 (S.D.N.Y.1987)).

Defendants seek reconsideration of this court's December 21, 1994 Decision and Order insofar as that Order granted sanctions against the Defendants in the form of resolving the issue of access in favor of the Plaintiffs, which Defendants contend is a "dispositive" sanction and therefore beyond the jurisdiction of this court, on the grounds that the sanction is unduly harsh and unjust as Defendants have not engaged in wilful misconduct, and the court granted attorney's fees to Plaintiffs for the costs of the motion. Affidavit of Linda H. Joseph, filed April 12, 1995, at ¶ 19; Affidavit of Linda H. Joseph, filed January 19, 1995, at ¶ 2.

 The district court may impose sanctions when "a party ... fails to obey an order to provide or permit discovery." Fed. R.Civ.P. 37(b). Imposition of discovery sanctions is within the broad discretion of the court. *See Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir.1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386–87 (2d Cir.1981). Although drastic sanctions such as striking the answer or entering a default judgment are available, they ordinarily are not imposed unless disobedience has been willful, in bad faith, or otherwise culpable. *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over documents requested and fails or refuses production without showing of inability to comply with court's order); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991) (order prohibiting corporations from presenting evidence on the issue of *alter ego* liability was justified as the corporation repeatedly failed to respond to a court order requiring document and witness

---

**3.** In a companion Decision and Order, filed December 21, 1994, this court indicated that the handwritten note made on a letter to Michael Marcus suggested that there may be a disputed issue of fact on prior access. Defendants assert that the court misunderstood or overlooked key documents, such as this note. Defendants' Motion to Reconsider, filed December 29, 1994, p. 6, Exhibit B. However, this court's interpretation of the handwritten note was consistent with the note being written, as asserted by Defendants, after the July 20, 1990 date when filming began on *Backdraft*. Defendants' Motion for Reconsideration, filed December 29, 1994, at pp. 6–7. The Plaintiffs' screenplays could easily have been used after filming began, by substituting scenes or adding additional scenes. So long as there was access to Plaintiffs' screenplays *before* the filming of *Backdraft* ended, copyrighted ideas from these screenplays could have been used in the motion picture *Backdraft*. Nothing that Defendants have argued is inconsistent with this view of the facts.

production for deposition). Open and unequivocal defiance of a court order is sufficient to support a finding of bad faith or wilful misconduct. *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 524 (2d Cir. 1990) (failure to answer interrogatories amounted to wilful disobedience of prior orders of the court, so court ordered sanctions under Rule 37 precluding admission of certain evidence at trial); *Thomas v. Victoria's Secret Stores,* 141 F.R.D. 456, 459 (S.D.Oh. 1992) (defiance of a court order supports a finding of bad faith or wilful misconduct).

Applying Rule 37(b) to the present case, it is clear that Defendants failed to comply with this court's orders requiring a full response to Plaintiffs' document requests. Numerous original documents used by Defendants to create the financial summaries that were produced for the Plaintiffs as well as other documents discussing expenses, charges and allowances related to *Backdraft* were available, but were not produced. It was not until after the December 21, 1994 Decision and Order was issued, that Defendants produced fifty-seven boxes of materials containing tens of thousands of pages of information which were relevant to Plaintiffs' September 14, 1992 discovery requests and this court ordered produced on two previous occasions, Decision and Orders, filed August 9, 1993 and March 21, 1994, prior to the December 21, 1994 Decision and Order.[4] Affidavit of Linda H. Joseph, filed June 12, 1995, at ¶ 5.

To avert the sanctions imposed by the December 21, 1994 Decision and Order, Defendants now argue that this court lacked authority to impose the access sanction, and that the access sanction was harsh and unjust as Defendants did not wilfully engage in misconduct. In maintaining that this court did not have the authority to impose the access sanction, Defendants state that the access sanction acts as partial summary judgment in favor of the Plaintiffs.[5] Defendants' Motion for Reconsideration, filed December 29, 1994, Affidavit of Linda H. Joseph, at ¶ 4.

Section 636(b)(1)(A) establishes that magistrate judges may hear and determine any pretrial matters pending before the court, save eight excepted motions, including motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). While magistrate judges may hear the motions excepted from their "hear and determine" authority under Section 636(b)(1)(A), they may only make proposed findings of fact and recommendations, which are reviewed *de novo* if a party objects to the magistrate judge's recommendations. 28 U.S.C. § 636(b)(1)(B).

■ The terms "dispositive" and "nondispositive" are found nowhere in the language of Section 636, but were included by Congress in the language of Rule 72 of the Federal Rules of Civil Procedure, which allows a magistrate judge to hear and decide "nondispositive" motions. Fed.R.Civ.P. 72(a). Rule 72 does not define the term dispositive beyond stating that a magistrate judge may issue an order in a case that is "not dispositive of a claim or defense of a party" and that he may issue only a recommendation in a case "dispositive of a claim or defense of a party." Fed.R.Civ.P. 72. Although Rule 72 makes no explicit reference to Section 636, the Advisory Notes make clear that when Congress included the term "nondispositive" in Rule 72(a), it was referring specifically to those matters not expressly exempted in Section 636(b)(1)(A). *See* Advisory Committee Notes of Rule 72 (stating that Rule 72(a) discusses "referrals of nondispositive matters under 28 U.S.C. § 636(b)(1)(A)"). "The legislative history of Section 636 confirms that Congress considered all preliminary procedural matters not expressly delineated in Section 636(b)(1)(A)

---

4. Also, by Order dated May 14, 1994, this court expressly directed that all previously ordered discovery go forward.

5. Plaintiffs agree with Defendants that access is itself a separate issue, although a component of the test for infringement, and it is dispositive. Plaintiffs' Reply Memorandum, filed January 11, 1995, at p. 6.

to be nondispositive, and therefore properly assigned to a magistrate judge for determination." *Robinson v. Eng,* 148 F.R.D. 635, 639 (N.D.Neb.1993) (citing H.R.Rep. No. 94–1609, 94th Cong., 2d Sess., 10–11 (1976) U.S.Code Cong. & Admin.News 1976, pp. 6170, 6171. (Congress intends that magistrates shall have the power to determine any pretrial matter except the motions specifically enumerated in Section 636(b)(1)(A) which Congress considers "dispositive of the litigation")). Therefore, both the Federal Rules of Civil Procedure and the legislative history of Section 636(b) support the conclusion that magistrate judges have the authority to determine any preliminary matter not expressly excepted in Section 636(b)(1)(A). *Rubin v. Smith,* 882 F.Supp. 212, 216 (D.N.H.1995); *Vaquillas Ranch Company, Ltd. v. Texaco Exploration and Production, Inc.,* 844 F.Supp. 1156, 1160–62 (S.D.Tex.1994); *Robinson, supra,* at 639–40; *Adkins v. Mid–American Growers, Inc.,* 143 F.R.D. 171, 175–76 (N.D.Ill.1992). *See* Administrative Office of the United States Courts, A Constitutional Analysis of Magistrate Judge Authority, 4–5, 21 (June 1993); Judicial Conference of the United States, The Federal Magistrates System: Report to the Congress by the Judicial Conference of the United States, 6 (December 1981); Peter G. McCabe, The Federal Magistrate Act of 1979, 16 Harvard Journal on Legislation 343, 354–55 (1979).

■ Discovery is clearly a pretrial matter, and magistrate judges have general authority to order discovery sanctions, however, a magistrate judge cannot issue sanctions which fall within the eight so-called dispositive motions excepted in Section 636(b)(1)(A). *Robinson, supra,* at 642 n. 14. In resolving the issue of access in favor of the plaintiffs, this court has not made a ruling which finally resolves a party's claim or defense,[6] as Plaintiffs must, notwithstanding the court's sanction, affirmatively prove each element of its copyright claim albeit under the general substantial similarity standard, and therefore, has not exceeded the authority granted in the July 15, 1992 referral order in its Decision and Order filed December 21, 1994.

■ Moreover, the sanctions imposed upon Defendants were not unduly harsh or unjust. Despite this court's issuance of three separate orders directing the Defendants to produce documents responsive to Plaintiffs' requests, the Defendants repeatedly failed to comply with the court's orders specifically directing production. It was not until this court issued its Decision and Order of December 21, 1994 that the Defendants chose to comply with the previous decisions compelling production of the financial documents. Thus, as Defendants repeatedly failed to comply with this court's previous orders for production of discovery materials, and chose only to produce the documents after sanctions were issued, this sanction will secure future compliance with discovery orders and act as a general deterrent to prevent parties from abusing discovery in future similar cases. *See Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062 (2d Cir.1979).

■ Defendants also seek to have the sanctions imposed in the December 21, 1994 Decision and Order modified as Plaintiffs failed to produce a letter dated September 3, 1991, from Daniel Oliverio, Plaintiffs' former counsel, to Anthony Yerkovich, a seven page document in which Dr. Burns discussed firefighters, the "Lions of Fire Service" script, and agreements signed by the Plaintiffs in connection with submitting their copyrighted works to Anthony Yerkovich Productions. Affidavit of Linda H. Joseph, filed April 21, 1995, ¶¶ 1–3; Affidavit of Linda H. Joseph, filed June 12, 1995, at ¶¶ 7–26. However, any misconduct of the part of Plaintiffs does not excuse the behavior of the Defendants with respect to this motion. The issue of Plaintiffs' asserted discovery violations is discussed in the accompanying Decision and Order regarding Defendants' cross-motion for sanctions, filed June 23, 1995. Regardless of whether or not Plaintiffs failed to produce some documents in response to Defendants' requests, such behavior does not excuse the Defendants' egregious failure to

---

**6.** Defendants never asserted a defense regarding the access issue. Defendants' Answers, filed July 10, 1992, November 2, 1992, and November 17, 1992.

timely produce fifty-seven boxes of documents relevant to Plaintiffs' discovery requests. Thus, as "two wrongs do not make a right," and misconduct cannot justify other misconduct, this court will not reduce either of the sanctions imposed against the Defendants in this case.

Additionally, information obtained subsequent to the Decision and Order filed December 21, 1994 supports this court's decision in granting the issue of access in favor of Plaintiffs. The discovery which was not produced until after the December 21, 1994 Decision and Order could have provided evidence regarding the issue of access to Plaintiffs' screenplays, and appears to provide evidence that the financial summaries provided to Plaintiffs in June of 1994 were not completely accurate if not outright misrepresentations. *See* Affidavit of Paul B. Zuydhoek, filed April 14, 1995; Affidavit of Paul B. Zuydhoek, filed June 1, 1995.

Defendants also challenge this court's authority to issue sanctions which provide that the issue of access is resolved in Plaintiffs favor, and argue that the District Court's referral was limited to decisions regarding pretrial orders, non-dispositive motions, supervision of discovery, and supervision of all procedural matters involving any of the above or preparation of the case. Referral Order, filed July 15, 1992. On July 15, 1992, Judge Skretny referred this copyright infringement action to this court pursuant to 28 U.S.C. § 636(b)(1)(A). Referral Order, filed July 15, 1992. The Referral Order states that the "Magistrate Judge shall not hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) *unless further ordered by this Court."* Referral Order, filed July 15, 1992 (emphasis added). As the District Judge has complete jurisdiction over all aspects of the case, he may amend a referral to a magistrate judge at any time, so long as the referral reserves some level of review by an Article III court as required by 28 U.S.C. § 636. As Judge Skretny subsequently issued, on January 13, 1995, an order indicating that, to the extent the magistrate judge deems the Defendants' motion for reconsideration dispositive, this court shall submit a report and recommendation for disposition of the Defendants' motion for reconsideration. Referral Order, filed January 13, 1995. As discussed, this court finds that the sanctions issued are non-dispositive and therefore within the authority granted the court under Judge Skretny's original referral order and thus subject to review only on the basis of being clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). However, if upon review of this Decision and Order Judge Skretny finds that the sanctions imposed are beyond this court's hear and determine authority, he may, in his discretion, treat this Decision and Order as a Report and Recommendation and make a *de novo* review of the matter. 28 U.S.C. § 636(b)(1).

### CONCLUSION

Based on the foregoing discussion, Defendants' motion for reconsideration is GRANTED and upon reconsideration this court adheres to its Decision and Order dated December 21, 1994. SO ORDERED.